40 C.C.P.A. (Patents)

## Application of FISK.

### Patent Appeals No. 5983.

United States Court of Customs and Patent Appeals.

June 17, 1953.

Harry Levy, New York City (Elmer Stewart, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JACKSON, Judge.

On July 12, 1947, appellant filed an application for a patent for Gas Expanded Products, Serial No. 760,709.

Subsequently, the Primary Examiner finally rejected all of the claims 2, 4, and 5 as unpatentable over the following references: Semtex (Great Britain) 571,284 August 17, 1945; Sachs-Modern Plastics Pages 173–176 December 1945; Hoover et al. 2,429,060 October 14, 1947; Nye 2,461,761 February 15, 1949.

The Board of Appeals affirmed the decision of the examiner and from the decision of the Board this appeal was taken.

The claims read as follows:

"2. In a method of producing a gas-expanded cellular product from a liquid, non-aqueous, thermosetting polymerizable resin mix comprising an unsaturated liquid alkyd of an ethylenic alpha, beta-discarborxylic acid and a glycol, and a monomeric monoenic liquid compound having a terminal ethylenic H group, an inhibitor of polymerization, and a peroxide catalyst, the improvement which consists essentially in the steps of additionally adding, when the mix is ready for gas expansion and rapid polymerization, water, an organic acid capable of decomposing carbonates, an inorganic carbonate adapted to liberate carbon dioxide gas within the mass without the use of additional heat, and a chemical gelation promoter, and causing gelling and setting of the mass with the aid of the chemical gelation promoter capable of inducing rapid polymerization of the said resin mix in the presence of the peroxidic catalyst concurrently with the expansion to a cellular mass, substantially no outside heat being supplied to the mass, the operation of gas expansion and gelation being performed on the as yet unexpanded original stable mixture.

"4. In a method of producing a gas-expanded cellular product from a liquid, non-aqueous, thermosetting polymerizable resin mix comprising a liquid non-aqueous intermediate alkyd formed by esterification of an ethylenic 1–2–dicarboxylic acid with a glycol, a monomeric liquid compound containing a terminal H group, an inhibitor of polymerization, and a peroxide catalyst, the improvement which consists essentially in the steps of additionally adding an organic acid capable of decomposing carbonates, and subsequently, when the mix is ready for gas expansion and rapid polymerization, adding water, an inorganic carbonate, and a chemical gelation promoter capable of inducing rapid interpolymerization of the unsaturated alkyd and the said monomeric ethylenic compound, the resulting mix being pourable and sufficiently stable and substantially unreactive for a desired period of time not exceeding about 60 minutes, and causing within such period, and without supplying additional heat, gas evolution and foaming of the mass by evolved carbon dioxide gas, and causing concurrently with the gas evolution and foaming, a gelling and setting of the mass aided by the promoter, and substantially completing the gelling and setting of the mass, with substantially no outside heat being supplied, by the time the carbon dioxide evolution has produced an expanded cellular mass of desired density, the operation of gas expansion and gelation being performed on the as yet unexpanded original stable mixture.

"5. In a method of producing a gas-expanded cellular product from a liquid, substantially anhydrous, thermosetting polymerizable resin mix comprising an unsaturated liquid alkyd of an ethylenic-alpha, beta-dicarboxylic acid and a glycol, said alkyd having an acid value in the range

from 10 to 100, and a monomeric monenic liquid compound having a terminal ethylenic group $-CH=CH_2$, an inhibitor of polymerization and a peroxide catalyst, the improvement which consists essentially in the steps of producing a dynamically unstable foam by adding to the unexpanded mix, as sole inflating agent, sufficient of an inorganic carbonate and water to liberate within the mass, by reaction with the acid and water components of the system without added heat, sufficient carbon dioxide to expand the mass to the low density desired, and also adding a chemical gelation promoter capable of inducing rapid polymerization, whereby expansion and setting of the mass take place concurrently with substantially no outside heat being supplied to the system, the operation of gas expansion and gelation being performed on the as yet unexpanded original stable mixture."

The application relates to a method used in the production of solid expanded material from liquid anhydrous thermosetting synthetic organic resins which innately will not form stable liquid-gas foams. It is particularly concerned with the treatment of liquid thermosetting copolymerizable mixtures of an unsaturated alkyd such as an alkyd of an ethylenic alpha, betadicarboxylic acid, and containing, in addition, a polymerizable monomeric compound having a terminal H group. $-C=CH_2$

Appellant states in his specification that an object of the invention is to provide means for overcoming non-foaming characteristics to produce a stable foam which when cured can be converted into a solid low density expanded product. Another object is to provide a low-viscosity liquid resin mixture which is self-foaming and self-polymerizing with the addition of little or no heat. An additional object is said to provide means for manufacturing therefrom cured foamed resin masses without using heavy molding, heating, or pressing equipment.

The patent to Hoover et al. relates to a method of impregnating fibrous sheets or cloths with heat-hardenable resins to form relatively stiff sheets or laminated sheets having a hard tough non-cracking surface, and particularly to a method of controlling transition of the liquid resin to a solid infusible state so as to avoid undesirable and uncontrollable flow of the resin with consequent unevenness of the surface of the final product.

The resins of the Hoover et al. reference contain monomeric styrene and a polymeric mixed maleicphthalic diethylene glycol ester. It is stated in this specification that if the liquid resinous material, containing a polymerization catalyst, is compounded with hydrazine, polymerization will commence immediately and shortly thereafter reach the gel stage and then by reason of the exothermic heat will continue to polymerize at a greater rate of speed until a mass results which is cured and substantially completely polymerized, all without the application of any external heat.

The patent to Nye relates to a method of making a cellular or expanded resin material formed from a whipped up or expanded 100 per cent polymerizable thermosetting resin. The liquid resin is of the class represented by the polyethylene glycol-maleate-styrene copolymer resins. That substance has added to it a polymerization catalyst and then is aerated with a high speed mixer. Subsequently, zinc stearate, sodium bicarbonate and water are added and the mixture whipped until there is complete dispersion and a light foamy mass is formed. Before casting the mass, acetic acid and a hydrazine gelling agent are added and the foam begins to gel within two or three minutes, being completely gelled within five to six minutes. It is stated that the mass may then be heated to a temperature of 230° to 260° F. in order to cure it into a cellular hardened condition. It is stated that there is produced in the expanded material a specific gravity as low as three or four pounds to the cubic foot.

The British patent relates to the production of cellular synthetic resin compositions from a liquid partially-condensed reaction product of phenol and formaldehyde, which is done by adding an acid hardening agent and a substance which will react to

form a gas. The mixture is placed in a mold and without the application of external heat the conversion of the resin to its fully condensed form takes place.

In the Sachs publication it is set out that the styrene polyester copolymers are outstanding among the copolymer resins which may be converted into cellular form without using pressure. The standard method, it is said, for producing cellular board is to catalyze the resin, mix in the blowing agent and expand in a mold consisting of two sheets of plate glass separated a suitable distance by a polyvinyl chloride gasket about the periphery. The blowing agent for those resins is carbon dioxide which is produced in the reaction between an acid and sodium bicarbonate. It is stated that the products may be of any degree of rigidity from a brittle to a rubbery texture with a density of from twenty to thirty pounds per cubic foot.

The Primary Examiner in his letter of rejection rejected all of the claims as unpatentable over the Sachs reference. The claims were also rejected by him as unpatentable over the Nye patent and further rejected as unduly multiplied.

The Board of Appeals in its decision stated that the claims stand rejected as not patentable over the Sachs reference in view of the Hoover, Nye and Semtex references, and also not patentable over the Nye patent with the Sachs or Semtex or Hoover references.

The Board noted that the claims are in *Ex parte* Jepson form, the preamble stating the old field in which the improvement lies, which in this case is in the making of a gas expanded cellular product from a liquid, nonaqueous, thermosetting polymerizable resin mix. The preamble enumerates the ingredients of that resin mix, which in all of the claims include "an inhibitor of polymerization and a peroxide catalyst." The Board observed that the claims differ in the steps and/or results recited.

It was observed in the decision of the Board that the examiner omitted in his statement some of the references used in

the final rejection and assumed those which were not mentioned were withdrawn but that the remaining references are sufficient to represent the condition of the prior art.

As said by the Board, the Nye patent is the closest of the references. The process begins with a resin mix to which there is added the same catalyst used by appellant—benzoyl peroxide. In the patent, the mix is whipped to a foam to which is added zinc stearate for the purpose of stabilizing the foam, sodium bicarbonate as a blowing agent, and water, which are whipped into the foam, then acetic acid and a gelling agent, phenyl hydrazine, are added. The mixture is heat cured in order to set the foam into a cellular hard mass.

The Nye patent discloses the development of porosity partially by whipping air into the resinous mix and partially by blowing carbon dioxide into the mix. It appears that both Sachs and Semtex procure porous cellular masses by blowing with bicarbonate and acid in order to release a great number of gas generated cells.

It seems to us that no invention is involved in the production of the cellular mix altogether by blowing nor to reverse the order of adding the blowing ingredient of the Nye reference (bicarbonate of soda) and the acid to the mix.

It is contended by appellant that he performed gas expansion and gelling concurrently through exothermic heat of the reaction without applying outside heat. It is disclosed in both the Semtex and Hoover references that exothermic heat of the reaction is employed to hasten the reaction, therefore, no invention would be involved in using such expedient in the resin mix defined in the claims.

All of the contentions of appellant received attention, but we find no error in the decisions of the patent tribunals.

The decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, Chief Judge.